UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-CR-37-DCR-MAS-2 |
| v. ) | |
| ) | |
| MARC PETIT FRERE, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION AND ORDER**

The Complaint in this matter alleged that Defendant Marc Petitfrere[1] ("Petitfrere") conspired with four others to distribute 500 grams or more of methamphetamine and 400 grams or more of fentanyl. [DE 1]. The Court finds that Petitfrere's extensive criminal history coupled with the seriousness of the instant charges require his danger-based detention.

**I.     RELEVANT FACTUAL, PROCEDRUAL, AND LEGAL BACKGROUND**

The Court conducted a detention hearing in this matter on March 23, 2022. [DE 7]. The Court previously found that the United States had a right to the hearing under 18 U.S.C. § 3142(f)(1)(B) and (C). [DE 4]. At the hearing, the United States sought Petitfrere's detention based on risk of flight and danger. The Court afforded Petitfrere and the United States all procedural rights provided by the Bail Reform Act ("BRA"). For the reasons described below, the BRA requires Petitfrere's detention.

---

[1] The Complaint and Indictment (and, thus, case style) list this defendant's name as "Petit Frere." However, he informed the Court the correct spelling is "Petitfrere," which the Court uses throughout this opinion.

Given the charges, a detention presumption typically arises under the BRA as to both nonappearance and danger risk; however, the detention hearing occurred prior to the preliminary hearing, so the presumption had not yet attached to the charge.[2] 18 U.S.C. § 3142(e)(3)(A). Thus, the burden was on the United States to prove that Petitfrere poses a risk of flight or nonappearance. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality,

---

[2] On March 24, 2022, the grand jury indicted Petitfrere and his codefendants with one count of conspiracy to distribute 500 grams or more of methamphetamine and 400 grams or more of fentanyl. [DE 10].

the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[3]

The allegations in the Complaint can be summarized follows: Mario Barba ("Barba") was the leader of a multi-state drug conspiracy that utilized Alejandro Rodriguez ("Rodriguez"), Jason Sparks ("Sparks"), and Jessica Cryns ("Cryns") as drug and/or currency couriers, and Petitfrere as a narcotics dealer. The Complaint alleges, among other things, that Sparks rented at least two vehicles in his name and acted as a driver, while Cryns attempted to fly $39,000 in suspected drug proceeds to the Los Angeles area, where Barba and Rodriguez reside. Sparks and Cryns were found with fentanyl in a vehicle while large quantities of methamphetamine and fentanyl were

---

[3] The subsection directs the Court to balance the following:

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

located at Petitfrere's home. Petitfrere, Barba, and Rodriguez all incurred drug-related state charges in the year preceding their arrests in this case. The United States presented the testimony of Detective Michael Lee Wattenburger of the Winchester Police Department. Detective Wattenburger testified regarding Petitfrere's involvement in the alleged conspiracy. According to Detective Wattenburger, on January 13, 2022, Petitfrere was stopped by Lexington Police, his vehicle was searched and discovered to contain a 9mm handgun and around 30 grams of fentanyl. Detective Wattenburger testified that members of the Drug Enforcement Agency later interviewed Petitfrere at the jail on January 18, 2022. Detective Wattenburger testified to what Petitfrere told the DEA agents on that day, which was that he was not a drug trafficker, but that the handgun in the vehicle belonged to him and was loaded at the time of the traffic stop. Detective Wattenburger also testified that law enforcement located fentanyl and drug paraphernalia at Petitfrere's residence on March 16, 2022, the date that Petitfrere was arrested on the instant federal charges.

     Petitfrere vehimetly disagreed with Detective Wattenburger's testimony, and, in the Court's view, successfully called into question the credibility of the testimony and some of the details in the Complaint. For example, Detective Wattenburger testified Petitfrere made statements to the DEA at the jail on January 18, 2022, but Kentucky court records show that Petitfrere posted bond on January 14, 2022. [Petitfrere Ex. 1]. Detective Wattenburger, who was not present for any of the events to which he testified, also provided inconsistent information regarding the amount and location of the narcotics attributed to Petitfrere. Finally, the United States admitted that the Complaint contained an error as to the reason Petitfrere's vehicle was searched in the first place—not because of a positive drug dog alert, but because officers observed the plain smell of marijuana.

As concerning as these inconsistencies and inaccuracies are, the Court nonetheless finds but must be detained. At the detention hearing stage (as opposed to the Complaint or preliminary hearing stage) the Court is not determining probable cause anew, but is considering the credibility of all of the evidence before it. Even with these factual inconsistencies, there is clear and convincing proof that Petitfrere poses a danger to the community that cannot be mitigated with release conditions.

## II.  ANALYSIS

The United States originally moved to detain Petitfrere as a risk of nonappearance and a risk of danger. At the hearing, however, the United States did not present any evidence or arguments regarding flight, other than to argue that Petitfrere was on state bond at the time he allegedly engaged conduct that led to the current charges and therefore the Court should conclude he is unlikely to abide by conditions of release. The Court agrees that the conduct on bond is a serious consideration here but regards that fact as indicative of Petitfrere's danger to the community not flight risk. Petitfrere presented the testimony of his brother and proffered the bond report, both of which show that he is a nearly life-long resident of Lexington, Kentucky, his parents, four siblings, and three children reside here, and has some work history here. *See* 18 U.S.C. § 3142(g)(3) (considering family and community ties, past conduct, and employment in assessing release propriety). To the extent the United States has not abandoned the argument that Petitfrere is a risk of flight or nonappearance, the Court finds the United States failed to prove it.

The risk Petitfrere poses to the community, however, is a different story. As outlined below through the § 3142(g) factors, the United States proved by clear and convincing evidence that Petitfrere is a risk to the community that cannot be abated with conditions of release.

1. **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1).

The nature of the offense favors Petitfrere's detention. In January 2022, Petitfrere had contained over 30 grams of fentanyl and a Glock handgun. [DE 1-1 at Page ID # 9]. Just two months later, law enforcement observed Sparks remove a box from Petitfrere's home that contained approximately one kilogram of fentanyl. When Petitfrere's residence was later searched, law enforcement located approximately 250 grams of suspected fentanyl, 500 grams of methamphetamine, a kilogram press, and drug residue in the trash can. [DE 1-1 at Page ID # 11-12]. These allegations imply Petitfrere acted as a drug trafficker and that his home was utilized as a "stash house" for the drug trafficking organization.

The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of drug offenses. *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989) (Congress determined that "drug offenders pose a special risk of flight and dangerousness to society."). Methamphetamine and fentanyl, particularly in the large quantities alleged here—and near firearms—are exceptionally dangerous offenses. The nature and circumstances of this conspiracy, and Petitfrere's apparent role in it, weigh heavily in favor of detention.

2. **Weight of the Dangerousness Evidence**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The Court engages no elemental assessment of the alleged offenses and makes no "pretrial determination of guilt[.]" *Id.* (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)).

The Court does, however, examine the intersection of the factors in § 3142(g)(1) and (g)(3). The instant allegations, if true, suggest Petitfrere was an integral part of this drug trafficking organization, that he had no other source of income, and that he continued his criminal activity while on state bond. These facts indicate the weight of his dangerousness is heavy. This factor favors detention.

### 3. History and Characteristics

The third BRA factor considers the history and characteristics of the person. *See* 18 U.S.C. § 3142(g)(3)(directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Petitfrere is in good physical and mental condition. [Pretrial Services Report at 3]. He does not have significant financial resources, nor does he have a history of steady employment. [Pretrial Services Report at 2-3]. He reported that he has been working for a family friend as a window installer for approximately one-week prior to his arrest on the federal charges. [Pretrial Services Report at 2]. Petitfrere admitted to using heroin, methamphetamines, and Percocet on a regular basis for the past year. [Pretrial Services Report at 2]. Though he claims this use is not tantamount to a substance use disorder, the Court is dubious that he is a "casual" user of heroin, methamphetamine, and Percocet on a monthly basis.

Petitfrere's criminal history report does not include the indicia of dangerousness such as prior drug trafficking convictions, violent crimes, domestic violence orders, or escalating criminal history. [Pretrial Services Report at 3-4]. He incurred a misdemeanor trespassing charge when he was 18, a few traffic infractions, and a drug possession charge in 2016.

### 4. Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The nature of the potential danger associated with the continuance of this conspiracy as a whole is grave. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation only increases that danger"). The United States argued Petitfrere poses a risk to the community if released because he is likely to continue drug trafficking.

The Court agrees with the government that Petitfrere's recent history suggests he poses a danger to the community because he has had access, at least since January 2022, to large quantities of fentanyl and methamphetamine. *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community"). He is alleged to have been storing these narcotics at his residence. Additionally, Petitfrere appears to have his own substance use disorder that may be impacting his conduct as related to these substances. Finally, there is compelling evidence that bond conditions will not deter Petitfrere from future criminal activity. After his arrest in January 2022 with 30 grams of fentanyl, Petitfrere's alleged drug trafficking only escalated. In March 2022, Petitfrere was directly connected to *a kilogram and a half of fentanyl* and a *quarter kilogram of methamphetamine*. This quantity of drugs, if sold into the community, poses a serious risk of injury and death. Petitfrere chose not to cease his criminal conduct even after being placed on state bond, leading this Court to conclude there are no conditions Petitfrere will respect that are sufficient to protect the community from the grave danger kilogram quantity fentanyl poses. *See United States v. Beard*, 528 F.Supp.3d 764, 774–75 (N.D. Ohio, 2021) (Finding that detention is

8

appropriate where "the record establishes that [the defendant] has not complied with any other conditions of supervision, whether post-release control or pretrial release on bond in State court and there is no reason to believe things will be different now" and the record also reflects low-level criminal enterprise activity.); *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).

Because Petitfrere has demonstrated he is determined to engage in what appears to be a criminal conspiracy regardless of court-imposed conditions of release, this factor favors Petitfrere's detention.

### III.   CONCLUSION

For the stated reasons, the Court finds that the United States failed to prove that Petitfrere is an irremediable flight risk based on facts supported by preponderance of the evidence but succeeded in proving by clear and convincing evidence that he poses a risk of danger to the community that cannot be mitigated with conditions. Therefore, the Bail Reform Act mandates detention. The Court has assessed the record, the testimony at the hearing, contemplated the risks, evaluated conditions, and determined that there exist no conditions that will reasonably assure that the safety of others or the community if Petitfrere is released. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Petitfrere.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 31st day of March, 2022.

