UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 22-037-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARC PETITFRERE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Marc Petitfrere has been charged with multiple offenses involving the distribution of methamphetamine and fentanyl, possessing a firearm in furtherance of a drug trafficking crime, and maintaining a drug-involved premises. A jury trial is scheduled to begin on September 26, 2022. Petitfrere has filed a motion to suppress all evidence seized as the result of the attachment of a GPS tracking device to his vehicle. [Record No. 46] The motion will be denied because, at the very least, the good faith exception to the exclusionary rule applies to law enforcement's utilization of the GPS tracking device.

**I.**

On November 30, 2021, Detective Kelly Shortridge of the Lexington Police Department applied to the Fayette District Court for a search warrant authorizing attachment of a GPS tracking device to a white 2012 Chrysler sedan registered to Defendant Marc Petitfrere. The affidavit in support of the application provides that, on October 20, 2021, Shortridge was assisting personnel from the DEA Lexington Field Office in conducting surveillance based on an active narcotics investigation in the area of North Main Street and

Newtown Pike in Lexington, Kentucky. [Record No. 46-2] Agents observed a suspected narcotics transaction at the target residence involving Amir Shalash and Abdallah Safi. As reported by members of Lexington Drug Enforcement Administration ("LRO DEA"), Safi appeared to be waiting outside the front entrance of the residence with a bag in his hand. Shalash arrived in a 2017 Maserati and entered the residence. After a brief period, he exited the residence carrying a briefcase and a black bag. Safi then left the residence carrying the same bag he arrived with and drove away in 2012 Infiniti. Shortridge stated that, based on his training and experience, this behavior likely represented the separation of narcotics and currency and is commonly observed with skilled narcotics traffickers.

Shortridge subsequently observed the Maserati and Infiniti at Prince Cuts barber shop off Richmond Road. Lexington Police Sergeant Tim Graul advised Shortridge that Prince Cuts had been the subject of several complaints of narcotics trafficking. While conducting surveillance in the parking lot of Prince Cuts, Shortridge observed a male subject exit a Ford Edge and show Safi something in a small bag. The male subject then entered Safi's Infiniti and later emerged without the bag. Shortridge subsequently observed Shalash, Safi, and the male subject in the parking lot smoking what appeared to be a marijuana cigarette. Shortridge added that Shalash had been observed coming and going from the target residence on multiple occasions.

Shortridge learned on November 5, 2021, that a murder occurred at the target residence. While executing a search warrant and investigating the murder, information was discovered leading officers to believe that the residence was involved in multiple types of criminal activities, including narcotics trafficking. The murder investigation also revealed that the

potential intended target of the shooting was Petitfrere's co-defendant, Mario Alberto Sanchez-Barba.

Members of the LRO DEA continued to conduct surveillance on Sanchez-Barba, who they suspected was involved with a large quantity narcotic trafficking operation. Sanchez-Barba did not have a known registered vehicle in his name. Officers believed that he utilized known associates, including Defendant Petitfrere, and/or their vehicles to transport himself around the city. Throughout their investigation, the LRO DEA observed a white 2012 Chrysler four door sedan registered to Petitfrere at the target residence. As members of LRO DEA continued their surveillance, they believed that the vehicle was still being utilized by Sanchez-Barba or Petitfrere to transport Sanchez-Barba throughout the city as recently as November 24, 2021.

Based on information provided by members of the LRO DEA, Shortridge found it reasonable to believe that Sanchez-Barba was utilizing the white 2012 Chrysler sedan, related to criminal activity including narcotic trafficking. He believed that issuing a tracker could identify additional locations, including stash locations of narcotics, meet locations where narcotics were being transferred, potential associates assisting Sanchez-Barba, and locations where additional criminal activity could have been occurring in connection with the criminal activity at the target residence that resulted in a murder. Shortridge requested to attach a tracking device to the Chrysler sedan for a period of 90 days, during which he did not believe the subjects would stop their illegal activities. He further asserted that such surveillance could provide additional locations where large amounts of narcotics and currency were being stored as well as provide information on where illegal transactions were taking place. Finding

probable cause for issuance of a search warrant, Fayette District Court Judge Lindsay Hughes Thurston issued a warrant authorizing the GPS tracking device on November 30, 2021.

## II.

Attachment of a GPS tracking device to a defendant's vehicle and the government's use of such a device to monitor the vehicle's movement constitutes a search under the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404 (2012). Accordingly, a warrant supported by probable cause is required. *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019); *see also United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021). If the warrant is not supported by probable cause, the evidence seized must be suppressed, unless some exception to the exclusionary rule applies. *See United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (citing *Utah v. Strieff*, 579 U.S. 232 (2016)).

The Court applies the totality of the circumstances test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018). The judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . .[,] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

When assessing whether there is probable cause for the warrant to issue, the court is limited to examining only "the information presented in the four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). An affidavit "is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). With respect to the conclusions to be drawn from the information within the four corners, a reviewing court

must accord great deference to the decision of the issuing officer. *United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020) (recognizing courts' obligation to give issuing judges the benefit of the doubt in "doubtful or marginal cases").

### III.

Here, the issuing judge reasonably concluded, based on all of the circumstances, that there was at least a fair probability that evidence of crime would be located based on authorization of the GPS tracking device for Petitfrere's vehicle. First, the affidavit included detailed information indicating that the target residence was a drug trafficking premises. Shortridge relayed the LRO DEA's observations regarding the suspected drug transaction involving Shalash and Safi. *See United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (observing that, when assessing whether probable cause exists, the Court "mutually impute[s] the knowledge of all the agents working together on the scene and in communication with each other"). Further, a murder occurred at the premises and officers believed that Defendant Sanchez-Barba might have been the intended target. Sanchez-Barba did not have a vehicle registered to him and, although there was reason to believe he might own a Mercedes, he had not been seen operating it since at least November 5, 2021. Importantly, Shortridge stated that the white 2012 Chrysler was observed at the target residence "throughout DEA's investigation," which spanned at least a month. Without citing specific facts in support, Shortridge noted his belief, based on LRO DEA surveillance, that the Chrysler was being used to transport Sanchez-Barba throughout the city as recently as November 24, 2021.

Shortridge's opinion that the Chrysler was being used to transport Sanchez-Barba, without additional supporting facts, would be insufficient. *See United States v. Weaver*, 99 F.3d 1372, 1377-78 (6th Cir. 1996) (noting that an affidavit that "states suspicions, beliefs, or

conclusions, without providing some underlying factual circumstances . . ." is considered a "bare bones affidavit"). However, his belief is bolstered by the following facts: it was based on LRO DEA surveillance (although he did not provide specific information); Sanchez-Barba did not have registered vehicle; and drug dealers tend to be highly mobile. *See United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (describing drug dealing as "highly mobile, hit-and-run operations"). Importantly, Shortridge (and the judge issuing the warrant) could reasonably conclude that there was no innocent explanation for the Chrysler's presence at the target house throughout the investigation. *See United States v. Gavin*, 2006 WL 3511144, at *4 (E.D. Mich. Dec. 6, 2006) (officers could draw on experience and training to deduce that there was no legitimate reason for people to be sitting in a parked car in front of drug houses late at night).

The Court rejects Petitfrere's argument that utilization of the GPS device amounted to a "fishing expedition." The warrant application (and warrant itself) included a 90-day limitation, the place to be searched was the defendant's Chrysler automobile, and the item to be seized was information emitted from the GPS tracker (i.e., stash locations of narcotics, meet locations where narcotics were being transferred, potential criminal associates, and locations where additional criminal activity could be occurring in connection with the murder at the target residence). [*See* Record No. 46-2, p. 5.] *See United States v. Gibbs*, 547 F. App'x 174, 179 (4th Cir. 2013) (warrant authorizing GPS monitoring of cell phone was not a "fishing expedition" when it included these elements).

Petitfrere relies on the Sixth Circuit's decision in *Frazier* to suggest that the search warrant was not based on probable cause. There, the affidavit in support of a warrant to search Frazier's home provided "details of Frazier's criminal enterprise" and recounted statements

- 6 -

from anonymous cooperating witnesses that did not involve the residence sought to be searched. 423 F.3d 526. It also noted that Frazier's phone records reflected that he had been in "constant contact with known drug dealers" and that officers had seen him coming and going from the residence in an expensive vehicle  *Id.* at 530.

In concluding that probable cause was lacking, the Sixth Circuit focused on the fact that there was no information corroborating the cooperating witnesses' statements. Further, the cooperating witnesses did not purport to have observed Frazier trafficking drugs from the residence to be searched. *Id.* at 532. And Frazier's alleged "constant contact" with drug dealers was not enough to establish probable cause to search Frazier's residence. Put simply, the defendant's status as a drug dealer, standing alone, did not give rise to a fair probability that evidence of drug dealing would be found in his home. *Id.* at 533.

*Frazier* is easily distinguishable from the present case for a couple of reasons. First, *Frazier* involved a search of the defendant's residence, which requires a "probable-cause nexus showing a fair probability that the home to be searched will contain the things to be seized." *Sheckles*, 996 F.3d at 338. When the search warrant concerns a location tracking device, the evidence sought is location information, not the physical location where the tracker is to be placed. Accordingly, the affidavit must show, as it did in this case, a fair probability that information received from the GPS tracking device will lead to evidence of criminal behavior. *See United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019); *see also United States v. Ennis*, 2022 WL 976930, at *2 (6th Cir. 2022).

Additionally, Detective Shortridge's affidavit was not based on uncorroborated information from confidential informants. Instead, law enforcement officers conducted surveillance of the target residence and observed probable drug trafficking activities occurring

there. Additionally, a murder occurred there and, during the investigation of that crime, officers uncovered further evidence of drug trafficking. Detective Shortridge connected Petitfrere's vehicle to the target residence by reporting that it was there "throughout" the investigation, which lasted at least one month.

But even if the warrant lacked probable cause, the good faith exception would apply. The exclusionary rule is designed to deter police misconduct. *United States v. Leon*, 468 U.S. 897, 905 (1984). Accordingly, the good faith exception to the exclusionary rule applies when evidence has been seized in "reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting *Leon*, 468 U.S. at 905). Whether the good-faith exception applies is a legal determination. In making this assessment, the Court asks, "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.

The United States Supreme Court has identified four circumstances in which the good faith exception does not apply. First, it does not apply where the issuing magistrate or judge was misled by information in the affidavit that the affiant knew was false or would have known was false but for his reckless disregard for the truth. *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 923). Second, it does not apply where the issuing magistrate or judge "wholly abandoned [her] judicial role" and merely served as a rubber stamp for the police. *Id.* Third, it does not apply where the affidavit was "bare-bones" and did not provide a substantial basis for determining the existence of probable cause or where it was so lacking in indicia of probable cause that belief in its existence was entirely unreasonable. *Id.* And fourth, the good-faith exception does not apply when the officer's

reliance on the warrant was not in good faith and was objectively unreasonable, such as where the warrant is facially deficient. *Id.*

Petitfrere indicates that all but the first of these circumstances exist in this case, but he has failed to advance any meritorious argument that the state court judge who issued the warrant abandoned her neutral and detached role and served as a rubber stamp for the police. He does argue that Shortridge's supporting affidavit is "bare bones" because it merely states his subjective beliefs and is "untethered to any supporting factual information." *See United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (describing a bare bones affidavit as "a conclusory affidavit" that asserts "only the affiant's belief that probable cause existed"). This is not an accurate description of Shortridge's affidavit, however. As previously described, the affidavit contains substantial factual information concerning suspected drug trafficking activities, largely based on officers' surveillance of the target residence.

While ideally Shortridge would have provided additional factual details tying Petitfrere's Chrysler to the suspected drug trafficking, he did state that the vehicle was observed at the target residence "throughout the investigation." The constant presence of the vehicle at a suspected drug premises where a murder had occurred reasonably supports a commonsense conclusion that tracking the vehicle's movements would uncover evidence of crime. Based on the foregoing, the warrant was not "so lacking in probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994).

Accordingly, it is hereby

**ORDERED** that Defendant Marc Petitfrere's motion to suppress [Record No. 46] is **DENIED**.

Dated: June 14, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky